IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **CEDAR COMMUNITIES AT COMMERCE, LLC, d/b/a BROOKSIDE COMMERCE**, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **CARING, LLC, d/b/a CARING.COM,** <br><br> Defendant. | CASE NO.: <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, by and through undersigned counsel, brings this lawsuit on behalf of itself and others similarly situated. Plaintiff alleges the following based upon personal knowledge, investigation by counsel, and facts that are a matter of public record and, as to all other matters, upon information and belief:

### INTRODUCTION

1. This complaint describes a deceptive and unfair scheme in which Defendant, in violation of the Lanham Act and Georgia's Uniform Deceptive Trade Practices Act and Fair Business Practices Act, employs false and misleading advertising to lure in customers, thereby stealing prospective customers and leads from Plaintiff and other senior living communities, while also harming their business reputation and good will.

2. Defendant, Caring, LLC, d/b/a Caring.com, is a web-based senior living placement and referral service claiming to help caregivers and families make informed choices about senior care living options for their loved ones. Plaintiff, Cedar Communities at Commerce, LLC, d/b/a Brookside Commerce, is a senior living community that has been harmed by Defendant's actions.

1

3.     Defendant employs an aggressive marketing scheme in which it misleads families and caregivers seeking senior care options. Despite advertising free, impartial guidance, Defendant exclusively refers potential customers to senior living communities that pay it a commission, increasing care and rent costs while excluding high-quality options like Plaintiff, who decline to participate in its pay-to-play model. Even more egregiously, Defendant leverages the names of Plaintiff and other senior living communities in online search results to drive traffic to its own website, creating the illusion that these communities are part of its placement and referral network when they are not. When potential customers click on these listings, Defendant redirects them to its own representatives, who steer them toward contracted communities in Defendant's referral network. This not only diverts business away from Plaintiff and other communities, but also damages their reputation and good will, as consumers may falsely assume that the alternatives Defendant suggests are superior. Plaintiff and similarly situated senior living communities suffer both financially and reputationally from Defendant's false advertising and deceptive and unfair practices, which undermine fair competition and consumer trust.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Plaintiff's claims are based, in part, on violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

5.     The Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's Georgia statutory claims under the Uniform Deceptive Trade Practices Act and Fair Business Practices Act.

6.     Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000,

exclusive of interest and costs; in the aggregate; there are more than 100 members in the proposed class and subclass; and at least one class and subclass member is a citizen of a state different from Defendant.

7. Venue is proper because Defendant resides in this judicial district pursuant to 28 U.S.C. § 1391(b)(1). Defendant is subject to the court's personal jurisdiction in this judicial district with respect to this civil action, as Defendant transacts business, receives commissions from contracted communities in its network, and has substantial contacts in this judicial district.

## PARTIES

8. Plaintiff, Cedar Communities at Commerce, LLC, d/b/a Brookside Commerce, is domiciled and registered in the State of Georgia and located in Commerce, Georgia. Plaintiff will hereinafter be referred to as "Brookside Commerce" or "Plaintiff."

9. Defendant, Caring, LLC, d/b/a Caring.com, is a company registered in North Carolina and headquartered in Charlotte, North Carolina. Defendant will hereinafter be referred to as "Caring.com."

## FACTUAL ALLEGATIONS

I. **Caring.com engages in false and misleading advertising.**

10. Caring.com is a web-based senior living placement and referral service that claims to help caregivers and families navigate the complex process of selecting senior care living options. Families and caregivers often face overwhelming stress and anxiety when trying to choose the right senior care option for their loved one. Caring.com takes advantage of this by promising expert, unbiased guidance to ease this process, all at no cost.

11. Caring.com's website and various social media platforms connect families with various senior living communities, including independent living, assisted living, memory care, and

3

nursing homes. Caring.com claims to offer free, personalized guidance from experienced advisors who understand the unique needs of seniors and their families.[1]

12. Caring.com's core advertising claim is that it offers a comprehensive, expert, and no-cost referral and placement service for families seeking senior living options, which suggests impartiality in its recommendations.[2] The company emphasizes that "Our Family Advisors provide invaluable expertise to ensure you have all the information you need to successfully find the community that meets all of your needs."[3]

13. However, these marketing claims are false and misleading. Rather than offering an unbiased, expert assessment of the best options out of a comprehensive set of communities from which seniors and their families can choose, Caring.com only refers to communities that pay Caring.com a commission. Thus, a family member or caregiver seeking unbiased and expert advice or recommendations from Caring.com's website or social media platforms is shown listings of only those senior living communities that have contracted with Caring.com pay referral commissions.

14. The supposed options offered by Carig.com are vastly limited. Individuals seeking information from Caring.com are presented with offerings from a fraction of the senior living communities available nationwide. Caring.com's network includes only a small portion of the approximately 30,600 total senior living communities in the United States.[4]

15. Caring.com's claim to be a free service for those seeking senior care living options is also false and misleading. When a senior is placed with a contracted community, that community pays Caring.com a commission equivalent to the first month's rent and care. These costs are

---

[1] https://www.caring.com/about/, accessed January 17, 2025.
[2] *See id.*
[3] *See id.*
[4] https://www.ahcancal.org/Assisted-Living/Facts-and-Figures/Pages/default.aspx, accessed January 17, 2025.

ultimately passed on to the consumer, as the community raises the monthly rent and care expenses to cover the commission.

16. The allegations asserted herein have been substantiated by Robert Grammatica, who is a former Chief Marketing Officer for another major senior living referral service. Mr. Grammatica cautions consumers about using senior living referral and placement services like Caring.com. Offering insight into the underlying scheme, Mr. Grammatica has stated:

> Senior living placement services establish contractual relationships with certain senior living providers. Some represent hundreds or even thousands, but none offer every option. Even the largest online placement service only has relationships with less than one-half of all senior living communities in the U.S.
>
> . . .
>
> Referral services make money by acquiring consumer contact information, establishing a relationship with them, and, ultimately, referring consumers to a contracted provider. They typically receive compensation equivalent to one month's rent after a client they referred successfully moves into a contracted community.
>
> . . .
>
> Many consumers incorrectly assume that online referral services refer communities based on family needs or the best fit. Many advisors online and in your local community are very knowledgeable about provider options—but only those they contract with. As a business, they naturally only present or recommend senior living communities that agree to pay them a commission. Some will even direct you to those offering the greatest financial return or helping residents move in faster than others.
>
> . . .
>
> Many senior referral agencies are well-funded, privately held organizations. As these for-profit services gain greater market share and pricing power – often through aggressive online marketing practices – they raise commission costs. Those higher costs are ultimately passed on to consumers down the line as costs continually increase.[5]

---

[5] https://www.whereyoulivematters.org/resources/senior-placement-services-how-do-they-work/, accessed January 17, 2025.

5

II. **Caring.com employs a deceptive and unfair scheme based on false and misleading advertising designed to steal potential customers and leads from Brookside Commerce and other senior living communities, thereby causing them harm, or potential harm.**

17. The scheme begins when someone searching for senior living options performs a simple online search. Brookside Commerce, an independent senior living community, is not contracted with Caring.com and does not pay commissions or receive referrals from them. However, when someone searches for "Brookside Commerce" on a web search engine like Google—whether prompted by word of mouth or Brookside Commerce's own marketing efforts—the search results will display not only Brookside Commerce's official website, but also a listing for Brookside Commerce on Caring.com's website. The screenshot below illustrates how a Google search result includes Brookside Commerce as it appears on Caring.com's landing page:



18. Caring.com manipulates search engine results to display its own listing for Brookside Commerce, intercepting or diverting keyword web searches for "Brookside Commerce" to Caring.com's website, where it lists Brookside Commerce. This listing falsely implies that Brookside Commerce is a community option available through Caring.com.[6] The page even features a fake stock photo of an elderly person in an art class and a phony 3.3 star rating and

---

[6] Manipulating or leveraging keyword web searches for senior living communities to redirect users to its own website is Caring.com's standard practice of steering prospective customer leads away from non-contracted communities. Robert Grammatica has stated, "Some even buy search keywords with the names of senior living communities to intercept traffic meant for a selected community." https://www.whereyoulivematters.org/resources/senior-placement-services-how-do-they-work/, accessed January 17, 2025.

review, which further substantiates the illusion of affiliation. To make matters worse, the lowest-rated reviews attributed to Brookside Commerce are actually directed toward facilities named "Emeritus at Peachtree Village" and "Brookdale" and date back nearly a decade.[7] This misattribution misrepresents Brookside Commerce and falsely associates it with outdated and unrelated negative feedback, unfairly tarnishing its reputation.[8]

19.     The screenshot below illustrates what a potential customer would see if he or she then clicked on the Brookside Commerce link appearing on Caring.com's Google results landing page:



---

[7] https://www.caring.com/senior-living/georgia/commerce/brookside-commerce#all_reviews_section, accessed January 17, 2025.
[8] This is especially damaging considering how Caring.com touts its review program: "We host the longest-running, highest-integrity senior living reviews program on the web, all to ensure families make the best and most informed choice possible for their loved ones." See https://www.caring.com/about/reviews_faq/, accessed January 17, 2025.

20. As shown above, when users click the link for Brookside Commerce on Caring.com's official website, they are redirected to a landing page tailored for Brookside Commerce, specifically designed and maintained by Caring.com. This page is designed to give the impression that Brookside Commerce is part of Caring.com's network of senior living options.

21. Having successfully lured the potential customer or lead to its website, Caring.com then uses this opportunity to steer the customer away from Brookside Commerce toward one of its contracted communities. For example, if a person seeks more information about Brookside Commerce by clicking the "Request a Tour," "Get Costs" or "Find Availability" links or calling the phone number listed on the page, he or she is connected to a representative of Caring.com—not Brookside Commerce. Because Brookside Commerce is not contracted with Caring.com, it is not an option as one of Caring.com's recommended senior living communities. Instead, Caring.com directs the inquiry to one of its contracted communities, earning a commission in the process, and excluding Brookside Commerce.

22. Brookside Commerce has been proximately damaged by Caring.com's wrongful conduct in several ways. By attracting potential customers to its website through false and misleading advertising and then listing Brookside Commerce on Caring.com's website in the manner described above, Caring.com creates the false impression that Brookside Commerce is one of its optional communities, even though it is not. This misleads potential customers and ultimately redirects them to other communities, causing Brookside Commerce to lose, or potentially lose, prospective customers and leads. In sum, Brookside Commerce has suffered injuries or potential injuries to its commercial interests in sales as a proximate result of Caring.com's false advertising and deceptive and unfair practices.

23. Caring.com's false advertising and deceptive and unfair practices have also harmed, or potentially harmed, Brookside Commerce's business reputation in another way. When Caring.com redirects prospective customers seeking information about Brookside Commerce through Caring.com to one of its contracted communities, as described above, those customers may wrongly assume that Caring.com recommends the other community as a better or superior option. This damages Brookside Commerce's reputation, especially since Caring.com claims to offer expert, comprehensive advice. Reputational damages are further compounded in this context based on the fact that Caring.com fabricated a 3.3 star review.

## CLASS ACTION ALLEGATIONS

24. **Nationwide Class:** Plaintiff brings this action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure on behalf of itself and a nationwide class of similarly situated entities, based on Caring.com's violation of the Lanham Act, as follows:

> Every entity in the United States that did not have a contract or any contractual affiliation with Caring.com at the time it was listed on Caring.com's website or social media platforms.

25. **Georgia Subclass:** Plaintiff also brings this action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure on behalf of itself and a Georgia subclass of similarly situated entities, based on Caring.com's violation of Georgia's Uniform Deceptive Trade Practices Act and Fair Business Practices Act, as follows:

> Every entity in the State of Georgia that did not have a contract or any contractual affiliation with Caring.com at the time it was listed on Caring.com's website or social media platforms.

26. Excluded from the class and subclass are Caring.com, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and

9

members of such persons' immediate families, any person in bankruptcy, and the presiding judge(s) in this case and its staff.

27. Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including the addition of more subclasses, in connection with its motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

28. **Numerosity**: At this time, Plaintiff does not know the exact size of the class and subclass; however, due to the nature of the trade and commerce involved, Plaintiff believes that the number of class and subclass members is in excess of one hundred and into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of class and subclass members is administratively feasible and can be determined through appropriate discovery in the possession of Caring.com.

29. **Commonality**: There are questions of law or fact common to the class and subclass, which include but are not limited to the following:

(a) Whether Caring.com's advertisements were false or misleading;

(b) Whether Caring.com's advertisements deceived or had the capacity to deceive customers;

(c) Whether Caring.com's advertisements violated Section 1125(a)(1)(B) of the Lanham Act;

(d) Whether Caring.com's conduct violated Georgia's Uniform Deceptive Trade Practices Act;

(e) Whether Caring.com's conduct was deceptive and unfair in violation of Georgia's Fair Business Practices Act;

(f) Whether Caring.com's deceptive and unfair actions and false advertising affected the public interest and harmed or potentially harmed the consumer public;

(g) Whether Caring.com's deceptive and unfair conduct and false advertising was willful

and intentional;

(h) Whether Caring.com's wrongful conduct caused harm or potential harm to Plaintiff and the putative class and subclass;

(i) Whether Caring.com's wrongful conduct poses the threat of future harm to Plaintiff and the putative class and subclass; and

(j) Whether injunctive relief is appropriate to prevent future harm to Plaintiff and the putative class and subclass;

30. **Typicality**: Like Plaintiff, many other senior living communities who were not contracted with Caring.com were listed on its website under the same circumstances. Plaintiff's claims are typical of the claims of the class and subclass because Plaintiff and each class and subclass member were injured by Caring.com's false advertising and deceptive and unfair conduct. Plaintiff and the class and subclass have suffered the same or similar injury as a result of Caring.com's false advertising and deceptive and unfair conduct. Therefore, Plaintiff's claims are typical of the claims of the class and subclass, and class treatment is appropriate.

31. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained competent counsel who is experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the class and subclass and does not have any interests adverse to those of the class and subclass.

32. **Superiority**: The common questions of law and fact enumerated above predominate over questions affecting only individual members of the class and subclass, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class and subclass will prosecute separate actions is remote because the damages or other financial detriment suffered by individual class and subclass members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against Caring.com.

## COUNT I

### FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT
### 15 U.S.C. § 1125(a)(1)(B)
### (also known as Section 43(a)(1)(B))

33. Plaintiff alleges this cause of action on behalf of itself and the proposed nationwide class, and in so doing, incorporates all preceding allegations.

34. Caring.com's conduct as alleged herein violates Section 1125(a)(1)(B) of the Lanham Act, which prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 1125(a)(1)(B).

35. Caring.com advertises that it offers a comprehensive, no-cost, and expert placement and referral service for families seeking senior living options, offering unbiased recommendations and advice based on a wide range of options. Additionally, by including non-contracted communities in its website listings, such as Plaintiff and the proposed class, Caring.com creates the misleading impression that these communities are part of its referral and placement network and available as options.

36. These advertisements are false or misleading, as set out above. They are literally false as a factual matter and/or literally true or ambiguous, while implicitly conveying a false impression, misleading in context, or likely deceiving or confusing to consumers.

37. These false and misleading advertisements were made in interstate commerce in connection with commercial advertising or promotion. The misrepresented services affect

interstate commerce in that Caring.com presented them on the worldwide web and through social media platforms, accessible by consumers nationwide.

38. These false and misleading advertisements are material and deceived or had the capacity to deceive consumers. Moreover, the deception had a material effect on consumers' decisions to use a senior living community. These advertisements deceived consumers by claiming Caring.com offered comprehensive, no-cost, expert, and unbiased referral and recommendation services. However, it only refers customers to contracted communities that pay it a commission, excluding non-contracted communities from its recommendations. The contracted community then ultimately passes on these costs to the customer by raising the costs of monthly rent and care. Moreover, customers seeking information about non-contracted communities are misled into believing these communities are recommended by Caring.com. In reality, Caring.com redirects these inquiries to contracted communities, securing a commission while excluding non-contracted communities.

39. Plaintiff and the putative class have been and/or are likely to be injured as a proximate result of the false and misleading advertising, in the form of reputational harm and a direct diversion of prospective customers and leads, as previously alleged.

40. Pursuant to 15 U.S.C. § 1117, Plaintiff and putative class members seek an award of Caring.com's profits, damages, costs, and attorneys' fees. Plaintiff and putative class members further seek an order enjoining Caring.com's false and misleading advertising to prevent future harm to Plaintiff and the putative class.

## COUNT II

## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
## GA. CODE ANN. § 10-1-390, *et seq.*

40. Plaintiff alleges this cause of action on behalf of itself and the proposed Georgia subclass, and in so doing, incorporates all preceding allegations.

41. The Georgia Fair Business Practices Act of 1975 ("FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE ANN. § 10-1-393(a).

42. Caring.com engaged in unfair and deceptive practices in violation of Section 10-1-393 by diverting prospective customers and leads, as described above. Specifically, Caring.com manipulates keyword web searches for Plaintiff and senior living communities in the Georgia subclass, redirecting users to its own website. There, it lists these communities in a way that falsely suggests they are part of Caring.com's network, recommended by the company, and an option to choose from. However, these communities are not part of its network. When customers seek information or make inquiries about Plaintiff or Georgia subclass members, Caring.com reroutes these inquiries to contracted communities, earning a commission while excluding the non-contracted ones. This unfair and deceptive practice misleads customers into believing they are contacting the listed communities, when in fact they are communicating with Caring.com representatives.

43. As set out above, Plaintiff and Georgia subclass members have been and/or are likely to be injured as a proximate result of these unfair and deceptive practices, in the form of reputational harm and a direct diversion of prospective customers and leads.

44. Plaintiff and the subclass members are "consumers" within the meaning of GA. CODE ANN. §§ 10-1-392 and 10-1-393. At all relevant times, Caring.com engaged in "trade or commerce" within the meaning of GA. CODE ANN. §§ 10-1-392 and 10-1-393.

45. Caring.com's unfair and deceptive actions harmed or has potentially harmed the consumer public because Plaintiff and the members of the Georgia subclass were injured in exactly the same way as thousands of others as a result of and pursuant to Caring.com's generalized course of unfairness and deception.

46. Caring.com's unfair and deceptive conduct occurred in the conduct of consumer transactions, as described throughout this Complaint.

47. Caring.com's unfair and deceptive conduct was willful and intentional.

48. Caring.com is liable to Plaintiff and the other subclass members for damages in an amount to be proven at trial. Accordingly, Plaintiff and the subclass members seek an award of damages and exemplary damages (for intentional violations) per GA. CODE ANN. § 10-1-399.

49. Plaintiff and the subclass members also seek an order enjoining Caring.com's unfair, unlawful, and/or deceptive practices, attorneys' fees and expenses, and any other just and proper relief available under the Georgia FBPA per GA. CODE ANN. § 10-1-399.

## COUNT III

### FALSE ADVERTISING IN VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
### GA. CODE ANN. § 10-1-370, *et seq.*

50. Plaintiff alleges this cause of action on behalf of itself and the proposed Georgia subclass, and in so doing, incorporates all preceding allegations.

51. Based on the conduct described, *supra*, Caring.com engaged in deceptive trade practices in violation of GA. CODE ANN. § 10-1-372(a) by passing off goods or services as those

15

of another, causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another, using deceptive representations or designations of geographic origin in connection with goods or services, representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have, representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another, disparaging the goods, services, or business of another by false or misleading representation of fact, advertising goods or services with intent not to sell them as advertised, and engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

52. Caring.com, Plaintiff, and the Georgia subclass members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

53. As set out above, Plaintiff and the Georgia subclass members have been and/or are likely to be damaged as a proximate result of Caring.com's deceptive and unfair trade practices, in the form of reputational harm and a direct diversion of prospective customers and leads.

54. Plaintiff and the Georgia subclass seek an order enjoining Caring.com's deceptive trade practices, an award of costs and attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this case be certified and maintained as a class action and for a judgment to be entered upon Defendant as follows:

    A.    certify the class and subclass as proposed herein, designating Plaintiff as class and subclass representative, and appointing undersigned counsel as Class Counsel;

    B.    award economic and compensatory damages on behalf of Plaintiff and all class and subclass members;

    C.    award all actual, general, exemplary, special, incidental, punitive, and consequential damages, including Defendant's profits, to which Plaintiff and class and subclass members are entitled;

    D.    award treble damages pursuant to law, and all other actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff, class, and subclass members are entitled;

    E.    order injunctive relief, compelling Defendant to cease its unlawful actions;

    F.    award reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

    G.    grant such other and further relief this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: 21st day of February, 2025   Respectfully submitted,

                */s/ Brent Irby*
                R. Brent Irby (GA Bar No. 224232)
                **IRBY LAW, LLC**
                2201 Arlington Avenue South
                Birmingham, Alabama 35205
                Tel: (205) 936-8281
                Email: brent@irbylaw.net

*Attorney for Plaintiff and the Proposed Class and Subclass*

**DEFENDANT MAY BE SERVED AT THE FOLLOWING ADDRESS:**

CARING.COM, INC.
c/o REGISTERED AGENT
176 MINE LAKE CT #100
RALEIGH, NC 27615