UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CEDAR COMMUNITIES AT COMMERCE, LLC, d/b/a/ BROOKSIDE COMMERCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARING, LLC, d/b/a CARING.COM,<br><br>Defendant. | CIVIL ACTION NO.<br>1:25-CV-00922-JPB |

# ORDER

This matter is before the Court on Caring, LLC's ("Defendant") Motion to Dismiss [Doc. 13]. This Court finds as follows:

## BACKGROUND

Defendant operates a web-based senior living placement and referral service. [Doc. 1, p. 3]. Defendant's website proclaims that it "host[s] the longest-running, highest-integrity senior living review program on the web, all to ensure families make the best and most informed choice possible for their loved ones." Id. at 7 n.8. On the website, Defendant also states that it offers "free, personalized guidance from experienced advisors who understand the unique needs of seniors

and their families." Id. at 4.  Moreover, Defendant's website claims that Defendant's "Family Advisors provide invaluable expertise to ensure you have all the information you need to successfully find the community that meets all of your needs." Id.

Cedar Communities ("Plaintiff") contends that these website statements are false and misleading for at least two reasons.  First, Plaintiff asserts that the statements are misleading because instead of providing expert and impartial guidance to its customers as to which facility is the best for their family members, Defendant exclusively refers potential customers to senior living communities that are in its referral network—*i.e.*, those communities that have contracted with Defendant for referral commissions.  Id. at 4.  Second, Plaintiff contends that the statements are misleading because Defendant's service is not free.  Id.  According to Plaintiff, Defendant is paid commissions that are equivalent to the first month's rent and care and these costs are passed on to the customer through higher rent and care expenses.  Id. at 4–5.

Plaintiff operates a senior living community that is not part of Defendant's referral network.  In other words, Plaintiff has not agreed to pay Defendant any sort of commission.  Nevertheless, when someone searches for "Brookside

Commerce" on a web search engine like Google, a prominent listing for Plaintiff's facility appears on Defendant's website as demonstrated in Figure 1 below.[1]



Figure 1:  Search Engine Results

Plaintiff asserts that this occurs because Defendant has manipulated or leveraged keyword web searches.  Id. at 6.  In Plaintiff's view, this manipulation of the search results is problematic because it falsely implies that Plaintiff's facility is part of Defendant's network—when it is not.  Id.  Plaintiff also asserts that the included photo is fake and that the 3.3-star rating is phony.  Id. at 6–7.

In the event that a potential customer clicks on Defendant's listing for Plaintiff's facility, that customer is redirected to a landing page tailored for Plaintiff's facility.  Id. at 7–8.  Plaintiff asserts that this separate page, which was created by Defendant, furthers the illusion that Plaintiff's facility is part of Defendant's referral network.  Id.

---

[1] The search will also display the official website of Plaintiff's facility.  [Doc. 1, p. 6].



Figure 2:  Landing Page

As shown on Figure 2 above, a potential customer visiting the landing page has the option to "Request Tour," "Get Costs" or "Find Availability."  If a potential customer clicks on one of those links, he or she is then connected to one of Defendant's representatives—not one of Plaintiff's representatives—who then directs the inquiry away from Plaintiff's facility and to a community within its referral network.  Id. at 8.

Plaintiff, individually and on behalf of all others similarly situated, filed this action against Defendant on February 21, 2025, asserting the following causes of

action: (1) false advertising in violation of the Lanham Act; (2) violation of the Georgia Fair Business Practices Act ("GFBPA"); and (3) false advertising in violation of the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"). [Doc. 1]. Defendant filed the instant Motion to Dismiss on May 16, 2025. [Doc. 13]. The motion is now ripe for review.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. Iqbal, 556 U.S. at 678.

## DISCUSSION

Defendant contends that Plaintiff has not plausibly alleged claims for false advertising or unfair business practices. The Court will first address Plaintiff's false advertising claims as alleged in Counts I and III.

### I. False Advertising in Violation of the Lanham Act (Count I) and the GUDTPA (Count III)

As stated previously, Plaintiff brings claims against Defendant for false advertising in violation of the Lanham Act and the GUDTPA. The Eleventh Circuit Court of Appeals has held that to make out a claim for false advertising under either the Lanham Act or Georgia law,[2] a plaintiff must show that (1) "the advertisements of the opposing party were false or misleading;" (2) "the

---

[2] The same elements apply to causes of action under both federal and state law. J-B Weld Co. v. Gorilla Glue Co., 978 F.3d 778, 796 (11th Cir. 2020).

6

advertisements deceived, or had the capacity to deceive, consumers;" (3) "the deception had a material effect on purchasing decisions;" (4) "the misrepresented product or service affects interstate commerce;" and (5) "the movant has been—or is likely to be—injured as a result of the false advertising." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004). Defendant contends that Plaintiff has not sufficiently alleged the first, third or fifth elements identified above. The Court will begin by addressing whether Defendant's website is false or misleading.

### A.     False or Misleading

Plaintiff claims that Defendant's website contains the following false or misleading statements about its referral service: (1) that it is comprehensive; (2) that it is free; and (3) that it offers expert recommendations. Plaintiff further asserts that Defendant misleads potential customers into believing that Plaintiff's facility is part of Defendant's referral network by creating a landing page with Plaintiff's facility's name that appears on Defendant's website and in search results.

To satisfy the first element of a false advertising claim, a plaintiff must show that the challenged advertisement is literally false or misleading. Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1308 (11th Cir. 2010). Importantly, "[w]hen

determining whether an advertisement is literally false or misleading, courts must analyze the message conveyed in full context, and must view the face of the statement in its entirety." Id. (citation modified).  As explained by the Eleventh Circuit, courts "must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1248 (11th Cir. 2002).

The Court will first analyze whether Plaintiff has adequately alleged that the statements on Defendant's website are false or misleading before turning to the landing page.  Defendant argues that the challenged statements identified by Plaintiff—i.e., "comprehensive directories," "expert consultation" and "free referrals"—are either non-actionable "puffery" or a true description of Defendant's services.  [Doc. 13, pp. 12–17].  Defendant further asserts that the overall description of its services is neither literally false nor misleading because Defendant does not purport to offer "unbiased" consultations and openly discloses its commission-based referral network model on the website.  Id. at 5, 13.

The Court recognizes that Defendant's website never specifically states that it provides unbiased recommendations.  Nevertheless, after viewing the statements as a whole and considering the full context of the statements, the Court finds it

plausible that a reasonable consumer under some circumstances would be misled into believing that Defendant's representatives generate their recommendations in an independent, fact-based manner and select possible options from the entire directory—instead of only promoting communities in their network.  Ultimately, the Court finds that Plaintiff's allegations are sufficient to satisfy the first element of a false advertising claim.  Thus, to the extent that Defendant seeks dismissal because Plaintiff failed to plead a false and misleading statement, the motion is **DENIED**.

As to the landing page, Defendant contends that Plaintiff's false advertising claims should be dismissed because the displayed information, *i.e.*, the stock photo and user reviews, are "unactionable statements of opinion[ ] and not . . . literally false or deceptively misleading statements of fact." Id. at 17.  Plaintiff counters that the representations are misleading and "create a false impression of affiliation" with Defendant.  [Doc. 15, p. 19].

The Court agrees with Plaintiff that the landing page creates a false impression of affiliation with Defendant.  As an initial matter, it is reasonable to assume that some people would think that Plaintiff's facility was part of Defendant's network simply because the landing page exists on Defendant's website.  Moreover, when looking at the landing page that Defendant created for

Plaintiff's facility, a potential customer is given the option to request a tour, get costs or find availability.  Especially when construed in the light most favorable to Plaintiff, these options give the false impression to potential customers that they have the ability to easily obtain additional information about Plaintiff's facility by just clicking a button.  Importantly, however, when potential customers click on one of those buttons, the potential customer is never provided with more information about Plaintiff's facility and is instead transferred to one of Defendant's representatives that recommends a facility that pays commissions to Defendant.  In the Court's view, these allegations are sufficient to show that the landing page is false and misleading.  Thus, to the extent that Defendant argues that dismissal is required as to the allegations concerning the landing page, the motion is **DENIED**.

    **B.**    **Materiality**

A plaintiff must also show materiality to successfully state a claim for false advertising.  To establish materiality, a plaintiff must demonstrate that the deception "is likely to influence the purchasing decision [of consumers]."  Osmose, Inc., 612 F.3d at 1319.  "The materiality requirement is based on the premise that not all deceptions affect consumer decisions."  Johnson & Johnson Vision Care, 299 F.3d at 1250.  Particularly relevant here, a plaintiff may demonstrate

materiality by showing that the defendant "misrepresented an inherent quality or characteristic of the product." Osmose, Inc., 612 F.3d at 1319.

Defendant contends that Plaintiff's false advertising claims are subject to dismissal because Plaintiff's allegations of materiality are "conclusory" and "unsupported." [Doc. 13, p. 21]. Indeed, Defendant asserts that Plaintiff's allegations are nothing more than "naked assertions devoid of further factual enhancement." Id.

The Court is not persuaded that Plaintiff's allegations are unsupported. Here, Plaintiff alleged that choosing a facility is a "complex process" and that families and caregivers "often face overwhelming stress and anxiety when trying to choose the right senior care option for their loved one." [Doc. 1, p. 3]. By creating a landing page and recommending other facilities to potential customers, Plaintiff asserted that potential customers are given the false impression that other facilities are better than Plaintiff's facility. This Court finds that the misleading misrepresentations alleged here create a question about the inherent qualities and characteristics of Plaintiff's facility. Moreover, Defendant's claim that it offers expert recommendations "enhances the likelihood that [the] misrepresentation would influence purchasing decisions" of potential customers, especially where the decision making is complex and stressful. Osmose, Inc., 612 F.3d at 1319.

Ultimately, the Court finds that Plaintiff has sufficiently alleged the materiality element because the misrepresentations pertain to inherent qualities and characteristics in such a way that is likely to influence purchasing decisions of potential customers.  Thus, to the extent that Defendant argues that the false advertising claims are subject to dismissal for failure to allege the materiality element, the motion is **DENIED**.

    **C.**    **Injury**

The final element of a claim for false advertising is injury or the likelihood of injury.  The Supreme Court of the United States has held that "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014).  Similarly, the Eleventh Circuit has explained that the plaintiff must show that it has been—or is likely to be—injured as a result of the false advertising.  Hickson Corp., 357 F.3d at 1260.  Importantly, the typical injury associated with a false advertising claim is an injury to "business reputation" or an injury to "present and future sales."  Lexmark, 572 U.S. at 131.

Defendant asserts that Plaintiff has not plausibly alleged an economic or reputational injury proximately caused by Defendant's statements. Specifically, Defendant claims that dismissal is required because Plaintiff failed to "identify a single consumer who withheld or cancelled business" with Plaintiff because of the false or misleading statements. [Doc. 13, p. 22]. Moreover, Defendant asserts that Plaintiff failed to point to any "particular quantum of diverted sales or loss of goodwill and reputation." Id. at 22–23.

In the Court's view, the Eleventh Circuit does not require that the injury element be pleaded with the level of specificity argued for by Defendant.[3] Indeed, noting the Supreme Court's approval of similar allegations, the Middle District of

---

[3] Defendant cited to no Eleventh Circuit authority to suggest that factual evidence of injury is required at the pleading stage. Defendant relies on Wall & Associates, Inc. v. Better Business Bureau of Central Virginia, Inc., 685 F. App'x 277 (4th Cir. 2017)—a decision which is not binding on this Court—to support its assertion that Plaintiff must identify specific customers that were diverted. In Wall, the plaintiff alleged that it was injured because the defendant falsely advertised and promoted a system for assigning letter grade ratings to businesses as national, uniform and objective when in reality, the system was based on subjective, biased and personal criteria. Id. at 279. Importantly, the plaintiff claimed that it was injured based on the grade that it received. Because the plaintiff failed to identify any customers who relied on the grading system as being unbiased and objective, the court upheld dismissal of the plaintiff's complaint. Id. Here, in contrast, the alleged false statement and alleged injury are far less attenuated. Unlike in Wall, where it was unclear if objective ratings drove the consumer behavior, here it can be reasonably inferred, at the very least, that Defendant's landing page—where a potential customer is connected with Defendant's representative when requesting information about Plaintiff's facility—is likely to harm Plaintiff, either by direct diversion of sales, a lessening of goodwill or both. In short, this case is different from Wall because it involves a direct diversion of customers.

Florida determined that general allegations of lost sales or damage to business reputation were sufficient to state a claim under the Lanham Act. Incarcerated Ent., LLC v. Warner Bros. Pictures, 261 F. Supp. 3d 1220, 1233 (M.D. Fla. 2017). Moreover, in another Lanham Act case, the Eleventh Circuit determined that an injury could be inferred in some cases. Osmose, Inc., 612 F.3d at 1320 ("The inference that the serious nature of the claims in the advertisements would irreparably harm [the plaintiff's] goodwill and market position is certainly reasonable.").

In this case, Plaintiff alleged that Defendant's deception diverts business away from Plaintiff's facility. Significantly, Plaintiff's Complaint details how Defendant's deception causes consumers to engage directly with Defendant rather than Plaintiff. E.g., [Doc. 1, p. 2]. On the landing page in particular, when a consumer seeks more information about Plaintiff's facility and clicks on "Request Tour," "Get Costs" or "Find Availability," that consumer is directed to Defendant's representative and never given any additional information about Plaintiff's facility. Many consumers are probably not even aware that Plaintiff's facility is not in Defendant's network. In addition to the diversion of business injury, Plaintiff has also alleged reputational injury. Specifically, Plaintiff contends that the reputation of its facility is damaged because consumers may

14

falsely assume that Defendant's alternative recommendations (other assisted-living facilities) are superior. In short, the Court finds that these allegations are sufficient to show an economic or reputational injury. At the very least, Plaintiff has adequately shown that it has been—or is likely to be—injured as a result of the false advertising. To the extent that Defendant seeks dismissal for failure to show injury, the motion is **DENIED**.

## II. Violation of the GFBPA (Count II)

In Count II, Plaintiff contends that Defendant violated the GFBPA by manipulating keyword web searches for the purpose of redirecting potential customers from Plaintiff's facility's website to its own website. Plaintiff asserts that the landing page further violated the GFBPA because Defendant directed inquires away from Plaintiff's facility to those in its referral network in exchange for a commission. [Doc. 1, p. 14]. According to Plaintiff, "[t]his unfair and deceptive practice misleads customers into believing they are contacting [Plaintiff's facility], when in fact they are communicating with [Defendant's] representatives." Id. Stated differently, Plaintiff contends that Defendant violated the GFBPA because Defendant created an unauthorized landing page under Plaintiff's facility's name that led consumers to believe that Plaintiff's facility was affiliated with Defendant.

The GFBPA was created "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce."  O.C.G.A. § 10-1-391(a).  The following are some examples of violations of the GFBPA:  "[p]assing off goods or services as those of another;" "[c]ausing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "[c]ausing actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another;" "[d]isparaging goods, services, or business of another by false or misleading representation;" and "[a]dvertising goods or services with intent not to sell them as advertised."  O.C.G.A. § 10-1-393(b).  To state a claim for violation of the GFBPA, a plaintiff must allege:  (1) a statutory violation; (2) causation; and (3) injury.  McClure v. Toyota Motor Corp., 759 F. Supp. 3d 1333, 1360 (N.D. Ga. 2024).  In addition to these elements, a plaintiff must also show justifiable reliance.  Id.

Defendant contends that the Court must dismiss Count II because Plaintiff's averments are "without even a scintilla of factual support."  [Doc. 13, p. 25].  Specifically, Defendant asserts that Plaintiff's allegation that Defendant "manipulated" keyword web searches is "pure conjecture" and that the allegation regarding injury is "merely a legal conclusion" because Plaintiff failed to provide

16

any specific incidents in which Defendant's representatives redirected potential business away from Plaintiff's facility.  <u>Id.</u>  Defendant does not argue that Plaintiff failed to plead justifiable reliance.

The Court is not convinced that Plaintiff has failed to state a claim here.  In the Court's view, Plaintiff's use of the word manipulated is not pure conjecture.  Moreover, as explained in the previous section, Plaintiff's allegations regarding injury are sufficient.  Consequently, to the extent that Defendant argues that Plaintiff's GFBPA claim is subject to dismissal, the motion is **DENIED**.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [Doc. 13] is **DENIED**.  Local Rule 16.2 requires parties to submit a Joint Preliminary Report and Discovery Plan.  The parties are **HEREBY ORDERED** to file the Joint Preliminary Report and Discovery Plan no later than fourteen days from the date of this order.  The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal.  In the event a Joint Preliminary Report

and Discovery Plan is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

**SO ORDERED** this 14th day of November, 2025.

_____
J. P. BOULEE
United States District Judge